**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

Civil Action No. 4:26-CV-3279

UNITED STATES OF AMERICA,

Plaintiff,

v.

THE PENNSYLVANIA STATE UNIVERSITY;
THE BOARD OF TRUSTEES OF THE
PENNSYLVANIA STATE UNIVERSITY,

Defendants.

---

# COMPLAINT

---

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

## INTRODUCTION

1. Federal law prohibits illegal aliens from being eligible to receive postsecondary education benefits based on residence within a state if such benefits are denied to U.S. citizens residing in other states. *See* 8 U.S.C. § 1623(a). There are no exceptions. Yet, Pennsylvania State University has ignored this congressional prohibition.

2. The Pennsylvania State University maintains a policy for undocumented students ("the Undocumented Student Policy") rendering resident illegal aliens eligible for in-state tuition while denying that same benefit to U.S. citizens from other states. *See* Pa. State Uni., *Information for Undocumented Students-with or without DACA.*[1] That constitutes blatant unequal treatment favoring illegal aliens over U.S. citizens.

---

[1] https://www.psu.edu/resources/first-year-students/undocumented (last visited Oct. 29, 2026).

3. Worse, such preferential treatment is squarely prohibited by federal law mandating that "an alien who is not lawfully present in the United States *shall not* be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a) (emphasis added). Accordingly, under the Supremacy Clause of the Constitution, the Policy's extension of eligibility for in-state tuition to illegal aliens is unconstitutional and must yield to federal law. *See* U.S. Const. art. VI, cl. 2.

4. Courts have long recognized 8 U.S.C. § 1623(a)'s preemptive effect. *See, e.g., Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 313 (5th Cir. 2023) (holding that Section 1623 "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same. No matter what a state says, if a state did not make U.S. citizens eligible, illegal aliens cannot be eligible"); *Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 606 (E.D. Va. 2004) (stating that under Section 1623(a), "public post-secondary institutions need not admit illegal aliens at all, but if they do, these aliens cannot receive in-state tuition unless out-of-state United States citizens receive this benefit"); *Foss v. Ariz. Bd. of Regents*, No. 1 CA-CV 18-0781, 2019 WL 5801690, at *3 (Ariz. Ct. App. Nov. 7, 2019) ("Section 1623 is directed at institutional practices, curtailing the authority of educational institutions to grant in-state tuition benefits to undocumented aliens. . . .").

5. Numerous courts have struck down similar in-state tuition laws and policies as unconstitutional based on Section 1623's preemptive effect. *See, e.g., United States v. Kansas*, No. 5:26-cv-04066-HLT-BGS, 2026 WL 2654069, at *6 (D. Kan. Sep. 9, 2026) (Memorandum and Order) (finding Kansas in-state tuition statute "preempted because it confers a postsecondary education benefit on an unlawfully present alien based on a state-defined residency conclusion without making that same benefit generally available to United States citizens and nationals

regardless of their residence"); *United States v. Illinois*, No. 25-cv-1691-DWD, 2026 WL 2137256, at *8–11 (S.D. Ill. July 24, 2026) (finding Illinois in-state tuition statutes as applied to illegal aliens expressly preempted by Section 1623(a)); *see also United States v. Texas*, No. 7:25-cv-00055, 2025 WL 1583869, at *1 (N.D. Tex. June 4, 2025) (permanently enjoining Texas defendants from enforcing Texas Education Code §§ 54.051(m) and 54.052(a) because the challenged provisions violated the Supremacy Clause), *aff'd*, 181 F.4th 548 (5th Cir. 2026); *United States v. Nebraska*, 835 F. Supp. 3d 962, 1000 (D. Neb. 2026) (holding Nebraska laws were preempted by Section 1623(a) because "they allow aliens unlawfully present in the United States to qualify as 'residents' of Nebraska for the purpose of post-secondary education benefits but deny such benefits to United States citizens of other states'"); *United States v. Oklahoma*, No. 6:25-cv-00265, ECF No. 23 at *1 (E.D. Okla. Aug. 29, 2025) (Order and Final Consent Judgment) (holding that challenged Oklahoma in-state tuition laws "as applied to aliens who are not lawfully present in the United States, violate[] the Supremacy Clause and are unconstitutional and invalid"). This Court should do the same.

6. Moreover, because the Undocumented Student Policy is not an enactment of state law that provides for eligibility for public benefits, the Undocumented Student Policy also violates 8 U.S.C. § 1621(d). *See United States v. Kentucky Council on Postsecondary Educ.*, No. 3:25-CV-00028-GFVT, 2026 WL 880597, at *9-10 (E.D. Ky. Mar. 31, 2026) (holding Kentucky regulation violated federal law, 8 U.S.C. § 1621(d), because it was a regulation, not an enacted state law as required by Section 1621(d)). Thus, the Pennsylvania State University's Policy is preempted twice over, and this Court should join the other courts in invalidating such a policy.

## JURISDICTION AND VENUE

7. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

8. Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because: (1) all Defendants reside in this judicial district, and (2) a substantial portion of the events giving rise to this Complaint arose from events occurring within this judicial district.

9. The Court has the authority to provide the relief requested under the Supremacy Clause, U.S. Const. art. VI, cl. 2; 28 U.S.C. §§ 1651, 2201, and 2202; and the Court's inherent equitable powers.

**PARTIES**

10. Plaintiff, the United States of America, regulates immigration under its inherent, constitutional, and statutory authorities. Plaintiff enforces federal immigration laws through its Executive agencies, including the Department of Justice, Department of Homeland Security ("DHS"), and DHS component agencies, U.S. Immigration and Customs Enforcement, U.S. Citizenship and Immigration Services, and U.S. Customs and Border Protection.

11. Defendant the Pennsylvania State University ("Pennsylvania State University") is a public university in the state of Pennsylvania that implements the Policy.

12. Defendant the Board of Trustees of the Pennsylvania State University is a corporate body established by the University's Charter ("Charter") with overall responsibility for the governance and welfare of the University and all the interests pertaining thereto. The Charter explicitly mandates the Pennsylvania State University "shall be under the management and government of the Board of Trustees." *See* Corporate Charter of the Pennsylvania State University.[2]

[2] https://bpb-us-e2.wpmucdn.com/elements.psu.edu/dist/2/51/files/2025/12/Charter-November-2017-1.pdf (last visited Oct. 30, 2026).

## FEDERAL LAW

13. The Constitution empowers Congress to "establish a uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3.

14. The Constitution also vests the President of the United States with "[t]he executive Power," U.S. Const. art. II, § 1, and authorizes the President to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3, which necessarily includes his duty to take care over immigration matters.

15. The United States has inherent, well-established, preeminent, and preemptive authority to regulate immigration matters. This authority derives from its inherent obligations as a sovereign, the Constitution, and numerous acts of Congress. *See, e.g.*, *Fong Yue Ting v. United States*, 149 U.S. 698, 711 (1893) ("The right to exclude or to expel all aliens, or any class of aliens, absolutely or upon certain conditions, in war or in peace, [is] an inherent and inalienable right of every sovereign and independent nation, essential to its safety, its independence, and its welfare . . . ."); *Ping v. United States*, 130 U.S. 581, 603–04 (1889) ("Jurisdiction over its own territory to that extent is an incident of every independent nation. It is a part of its independence. If it could not exclude aliens it would be to that extent subject to the control of another power."); *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950) ("The exclusion of aliens is a fundamental act of sovereignty. The right to do so stems not alone from legislative power but is inherent in the executive power to control the foreign affairs of the nation. When Congress prescribes a procedure concerning the admissibility of aliens, it is not dealing alone with a legislative power. It is implementing an inherent executive power.").

16. Based on its enumerated constitutional and sovereign powers to control and conduct relations with foreign nations, the Federal Government has broad authority to establish

immigration laws. *See Fiallo v. Bell*, 430 U.S. 787, 798 (1977) (explaining that matters of immigration concern "policy questions entrusted exclusively to the political branches of our Government," leaving "no judicial authority" for courts "to substitute [their] political judgment for that of the Congress").

17. In 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA") and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). *See* PRWORA, Pub. L. No. 104-193, 110 Stat. 2105, 2268 (1996); IIRIRA, Pub. L. No. 104-208, Div. C, § 505, 110 Stat. 3009-546, 3009-672 (1996). Those Acts sought to encourage self-sufficiency among immigrants, limit their dependence on public assistance, and prevent public benefits from serving as an incentive for illegal immigration. *See* 8 U.S.C. § 1601(1) ("Self-sufficiency has been a basic principle of United States immigration law since this country's earliest immigration statutes.").

18. Congress declared that "aliens within the Nation's borders [should] not depend on public resources to meet their needs, but rather rely on their own capabilities and the resources of their families, their sponsors, and private organizations." 8 U.S.C. § 1601(2)(A).

19. Congress also emphasized that "the availability of public benefits [should] not constitute an incentive for immigration to the United States." *Id.* § 1601(2)(B).

20. Moreover, Congress determined that "[i]t is a compelling government interest to enact new rules for eligibility and sponsorship agreements in order to assure that aliens be self-reliant in accordance with national immigration policy" and "to remove the incentive for illegal immigration provided by the availability of public benefits." *Id.* § 1601(5)-(6).

21. Accordingly, a state funded public university may not offer in-state tuition ("resident tuition") benefits to illegal aliens present in the United States based on their residence in the state, if those same benefits are denied to American citizens from other states. *See id.*

§ 1623(a). IIRIRA included a clear "[l]imitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits." *Id.*

Section 1623(a) provides that:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

*Id.*

22. Accordingly, under 8 U.S.C. § 1623(a), illegal aliens present in the United States are not eligible for postsecondary education benefits based on state residency unless those same benefits are also offered to all American citizens, regardless of their state of residence.

23. On February 19, 2025, President Trump issued Executive Order 14218, *Ending Taxpayer Subsidization of Open Borders*,[3] ordering federal departments and agencies to "ensure, to the maximum extent permitted by law, that no taxpayer-funded benefits go to unqualified aliens." *Id.* § 2(a).

24. On April 28, 2025, President Trump issued Executive Order 14287, *Protecting American Communities From Criminal Aliens*,[4] directing relevant officials to ensure the "[e]qual [t]reatment of Americans" and to "take appropriate action to stop the enforcement of State and local laws, regulations, policies, and practices favoring aliens over any groups of American citizens that are unlawful, preempted by federal law, or otherwise unenforceable, including State laws that provide in-State higher education tuition to aliens but not to out-of-State American citizens." *Id.* § 5.

---

[3] Exec. Order No 14218, 90 Fed. Reg. 10581, § 2(a) (Feb. 19, 2025) [https://perma.cc/V5KX-DX6Q].

[4] Exec. Order No. 14287, 90 Fed. Reg. 18761, § 5 (Apr. 28, 2025) [https://perma.cc/83KY-N8Q9].

25. These Executive Orders emphasize that state governments must not confer greater benefits to illegal aliens present in our Nation than to U.S. citizens. They also reflect Congress's end—expressed in multiple provisions of the Immigration and Nationality Act—to reduce incentives for illegal immigration by limiting access to certain public benefits intended for U.S. citizens.

**PENNSYLVANIA STATE UNIVERSITY'S RESIDENCY POLICY**

26. Federal courts have long recognized that state funded public universities like the Pennsylvania State University are state actors. *See American Future Sys., Inc. v. Pa. State Univ.,* 752 F.2d 854, 861 n. 24 (3d Cir. 1984) (holding Penn State's close symbiotic relationship with the Commonwealth of Pennsylvania sufficient to establish state actor status); *Krynicky v. Univ. of Pittsburgh*, 742 F.2d 94 (3d Cir. 1984) (holding the University of Pittsburgh and Temple University were state actors under 42 U.S.C. § 1983 because their symbiotic relationships with Pennsylvania rendered their conduct attributable to the Commonwealth); *Henderson v. Pa. State Univ.*, No. 4:21-cv-00872 WL 2022 WL 838119 at *4 (M.D. Pa. Mar. 21, 2022) (invoking *American Future Systems* to reaffirm Penn State's status as a state actor).

27. The Pennsylvania State University rewards an illegal alien with eligibility for in-state tuition, based on residency within Pennsylvania, while explicitly denying eligibility for resident tuition to U.S. citizens who are not Pennsylvania residents. *See* Undocumented Student Policy*, supra* note 1.

28. Pennsylvania State University, like most universities, charges two separate tuition rates for enrollment at the institution: resident and nonresident tuition. *See* Pa. State Univ., *Tuition and Costs*.[5] For example, Pennsylvania State University charges Pennsylvania residents between

[5] https://www.psu.edu/admission/undergraduate/tuition-costs(last visited Oct. 20, 2026).

$41,772 and $46, 680 for one academic year for tuition but charges non-Pennsylvania and international residents between $65,468 and $71,876 for the same. *Id*.

29. As the name suggests, the Pennsylvania State University's "Residency Classification for Tuition and Fee Purposes" classifies students for in-state tuition purposes based on residency in Pennsylvania. Under the guidance, "[a] student shall be classified as a Pennsylvania resident for tuition purposes if that student has a Pennsylvania domicile **and** that student's presence in Pennsylvania is not primarily for educational purposes."[6] *See* Pa. State Univ., Tuition and Financial Aid, "Residency Classification for Tuition Purposes" ("Residency and Tuition Policy") (emphasis in the original).

30. The Residency and Tuition Policy defines "domicile" explicitly as "a person's existing and intended fixed, permanent and principal place of residence. A student whose presence in Pennsylvania is primarily for educational purposes shall be presumed to be a non-Pennsylvania resident for tuition purposes." *Id.* Pennsylvania State University further states "[a] student who has continuously resided in Pennsylvania for purposes other than education for at least 12 consecutive months immediately preceding their initial enrollment at the University or an institution of higher education is presumed to have a Pennsylvania domicile for purposes of tuition." *Id.*

31. In contrast, "[a] student who has not continuously resided in Pennsylvania for at least 12 consecutive months immediately preceding their initial enrollment at the University or another institution of higher education is presumed not to be a resident of Pennsylvania for purposes of tuition but may rebut this presumption by clear and convincing evidence." *Id.*

32. Eligibility for in-state tuition is thus explicitly linked to residence.

33. In addition to its main campus at University Park, Pennsylvania State University operates Commonwealth Campuses at various locations across the State. Expenses for

[6] https://www.psu.edu/admission/undergraduate/tuition-costs (last visited Oct. 29, 2026).

Pennsylvania State University's Commonwealth Campuses similarly differ depending on one's residency status. A Pennsylvania resident's costs for one academic year at a Commonwealth Campus ranges from $34,452 to $41,180 but rates for non-Pennsylvania and international residents ranges from $44,454 to $54,196. *See* Tuition and Costs, *supra* note 5.

34. Under the Undocumented Student Policy, first-year undocumented applicants are permitted to apply through the Common Application and encouraged "to select the same citizenship status in all sections of the application process." When completing the geography, nationality, and general section of the common application, undocumented applicants should select "DACA, Undocumented, Deferred Enforced Departure, or Temporary Protected Status." *See* Undocumented Student Policy, *supra* note 1.

35. Pennsylvania State University's Undocumented Student Policy explicitly states "Undocumented students, with or without DACA, can be eligible for in state tuition if they meet Penn State's *residency requirements*. These requirements include attending an accredited Pennsylvania high school for at least four years and graduating from an accredited Pennsylvania high school or receiving a Pennsylvania General Educational Development (GED) certificate." *See id.*(emphasis added).

36. Nothing in the Undocumented Student Policy's criteria requires lawful presence in the United States for in-state tuition eligibility.

37. The category "undocumented" includes aliens who are not lawfully present in the United States within the meaning of 8 U.S.C. § 1623(a). Indeed, Pennsylvania State University's Undocumented Student Policy defines that term as an applicant "within the United States without legal documentation." *Id.*

38. High school attendance within Pennsylvania is a proxy for Pennsylvania residency. Pennsylvania law mandates "every child of compulsory school age having a legal residence in [the

Commonwealth of Pennsylvania] . . . and every migratory child of compulsory school age, is required to attend a day school in which the subjects and activities prescribed by the standards of the State Board of Education are taught in the English language." 24 P.S. Education § 13-1327. "Compulsory school age" is defined under Pennsylvania law as "no later than six (6) years of age until the child reaches eighteen (18) years of age." *Id.* § 13-1326.

39. The tuition rate for illegal aliens who satisfy the Undocumented Student Policy is the same tuition rate as other Pennsylvania residents. Conversely, a U.S. citizen who is not eligible for in-state tuition due to residency requirements is required to pay a higher, nonresident tuition.

40. Thus, through the Undocumented Student Policy, illegal aliens residing in Pennsylvania are eligible for in-state tuition so long as they satisfy, among other criteria, Pennsylvania residency requirements, while U.S. citizens residing outside Pennsylvania are not eligible.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF THE SUPREMACY CLAUSE
### (PREEMPTION OF THE RESIDENCY POLICY – 8 U.S.C. § 1623)

41. The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

42. The Supremacy Clause of our Nation's Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof … shall be the supreme Law of the Land … any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

43. The preemption doctrine is derived from the Supremacy Clause. Express preemption occurs when Congress includes express language within the statute indicating its preemptive intent. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).

44. Pennsylvania State University's Undocumented Student Policy extends eligibility for in-state tuition benefits to illegal aliens contrary to Congress's prohibition on providing eligibility for postsecondary education benefits (lower, resident tuition rates) based on residency to illegal aliens present in the United States that are not available to all U.S. citizens regardless of residency. *See* 8 U.S.C. § 1623(a).

45. By extending in-state tuition eligibility to illegal aliens, Pennsylvania State University's Undocumented Student Policy frustrates the federal immigration objectives served by Section 1623. Pennsylvania State University's Undocumented Student Policy perversely rewards illegal aliens' violation of federal law with reduced tuition solely because of their residency within Pennsylvania's borders, while imposing higher costs on lawful out of state residents. Moreover, any attendant diversion of enforcement resources to illegal aliens incentivized to remain illegally in the United States additionally harms the Federal Government's interests.

46. Accordingly, Pennsylvania State University's Undocumented Student Policy is preempted by Section 1623 and unconstitutional.

**COUNT II**
**VIOLATION OF THE SUPREMACY CLAUSE**
**(PREEMPTION OF THE RESIDENCY POLICY – 8 U.S.C. § 1621)**

47. The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

48. Pennsylvania State University's Undocumented Student Policy, which is not an enactment of state law, violates Section 1621(d)'s requirement that illegal aliens "not [be] eligible for any State or local public benefit," unless "through enactment of a State law." 8 U.S.C. § 1621(a), (d).

49. Accordingly, Pennsylvania State University's Undocumented Student Policy is preempted by Section 1621 and unconstitutional.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests the following relief:

1. That this Court enters a judgment declaring that Pennsylvania State University's Undocumented Student Policy violates the Supremacy Clause, because it extends eligibility for postsecondary education benefits to illegal aliens on the basis of their residence in Pennsylvania but denies the same eligibility for such benefits to U.S. citizens regardless of residence, is preempted by federal law and therefore invalid under the Supremacy Clause.

2. That this Court enter a judgment declaring that the Undocumented Student Policy violates the Supremacy Clause because it extends eligibility for public benefits to illegal aliens under a policy and not an enactment of State law.

3. That this Court issue a permanent injunction that prohibits Defendants as well as their successors, agents, and employees, from enforcing the Undocumented Student Policy, or any similar subsequent policy, because it extends State and local public benefits to resident illegal aliens but not nonresident U.S. citizens;

4. That this Court award the United States its costs and fees in this action; and

5. That this Court award any other relief it deems just and proper.

DATED: November 5, 2026

Respectfully Submitted

BRIAN D. MILLER
United States Attorney

*/s/ Gerard T. Donahue*
GERARD T. DONAHUE
Acting Deputy Civil Chief
Assistant U.S. Attorney
Middle District of Pennsylvania
Atty. I.D. #PA 331508
1501 N. 6th Street, Box 202
Harrisburg, PA 17102
Phone: (717) 221-4482
Gerard.Donahue@usdoj.gov

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

CODY M. POPLIN
Deputy Assistant Attorney General

HILARY K. PERKINS
Director

JACQUELINE COLEMAN SNEAD
Deputy Director

/s/ *Matthew F. Mimnaugh*
Matthew F. Mimnaugh (NJ Bar No. 139342019)
Trial Attorney
Enforcement & Affirmative Litigation Branch
Civil Division, U.S. Department of Justice
P.O. Box 386
Washington, D.C. 20044
Tel: (202)880-0208
Email: Matthew.F.Mimnaugh@usdoj.Gov

*Attorneys for the United States*